Joseph **GREEN** and Freight Liquidators of Silver Spring, Maryland et al., Appellants,

v.

**UNITED STATES**, Appellee.

No. 7019.

District of Columbia Court of Appeals.

Argued Sept. 18, 1973.

Decided Dec. 4, 1973.

Rehearing en Banc Denied Jan. 21, 1974.

---

Albert J. Ahern, Jr., Bailey's Crossroads, for appellants.

Peter K. Mair, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Seymour Glanzer and Julian S. Greenspun, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge:

Appellant Joseph Green was charged in a sixty-count indictment with violating D. C.Code 1973, § 22–1411 (publishing fraudulent advertising in the District of Columbia).[1] In a nonjury trial, he was

---

1. D.C.Code 1973, § 22–1411, provides in pertinent part:

Fraudulent advertising.

It shall be unlawful in the District of Columbia for any person, firm, association, corporation, or advertising agency, either directly or indirectly, to display or exhibit to the public in any manner whatever, whether by handbill, placard, poster, picture, film, or otherwise; or to insert or cause to be inserted in any newspaper, magazine, or other publication printed in the District of Columbia; or to issue, exhibit, or in any way distribute or disseminate to the public; or to deliver, exhibit, mail, or send to any person, firm, association, or corporation any false, untrue, or misleading statement, representation, or advertisement with intent to sell, barter, or exchange any goods, wares, or merchandise or anything of value.

. . .

D.C.Code 1973, § 22–1412, provides:

Prosecution under section 22–1411.

Prosecution under section 22–1411 shall be in the Superior Court of the District of Columbia upon information filed by the United States Attorney for the District of Columbia, or one of his assistants.

And D.C.Code 1973, § 22–1413, provides:

Penalty under section 22–1411.

Any person, firm, or association violating any of the provisions of section 22–1411

found guilty as charged. He was sentenced for counts 1 to 57 to a $400 fine or 30 days incarceration on each count; for counts 58 and 59, to a $400 fine and 30 days on each count; for count 60, to a fine of $400 and a 60-day suspended sentence. All counts were consecutive.

■■■■ On appeal the only issues meriting discussion are (1) whether the evidence supported the trial court's finding that appellant caused the advertisements complained of to be inserted in the Washington Post newspaper, and (2) whether the trial court erred in treating each daily publication of the false advertisement during the 60-day period as a separate offense.[2] We affirm.

Appellant is a partner in a group of retail stores located in the Virginia and Maryland suburbs of the District of Columbia that conduct business under the name of "Freight Liquidators." At a hearing before the Federal Trade Commission, he explained his role in this business operation[3] as follows: That although he aids his partners in the hiring and training of store personnel, his main function is simply advertising and buying; and that his partners rely on his decisions in the merchandising area because he is more familiar with the local and federal statutes and therefore less likely to run afoul of the law.

The advertisement in question was placed in the Washington Post from February 1 through March 3, 1972. It stated in material part:

> SEWING MACHINES
> TRUCKLOAD LIQUIDATION
> ONLY $63
> FINAL NOTICE
> BRAND NEW

(1972) Automatic "Touch-N-Stitch" zigzag sewing machines that do buttonholes, stretch-stitch, embroider, monograms, applique, etc. All without attachments.

These machines originally sold for $219, carry a 25-year guar. & free instructions & will be released on a first come, first serve basis. Available in portable or console. Terms arranged, check, cash or charge card is acceptable. Call first to see if any left.

> FREIGHT
> LIQUIDATORS

[Hereinafter were listed the retail store addresses and telephone numbers in the Washington area.][4]

At trial the government called several consumer-witnesses. Their uncontroverted testimony was that in response to this advertisement they went to various Freight Liquidators stores expecting to buy an operable sewing machine for $63. To their

---

shall upon conviction thereof, be punished by a fine of not more than $500 or by imprisonment of not more than sixty days, or by both fine and imprisonment, in the discretion of the court. A corporation convicted of an offense under the provisions of section 22–1411 shall be fined not more than $500, and its president or such other officials as may be responsible for the conduct and management thereof shall be imprisoned not more than sixty days, in the discretion of the court.

2. The contentions that the trial court lacked jurisdiction and that it was error to proceed by way of indictment are without merit. See D.C.Code 1973, § 22–1412 and Super.Ct. Crim.R. 7. The contention that the sentence provided for in the written judgment was invalid because the trial court, in its oral pronouncement of sentence, did not use the words

"for each" count is frivolous since the court did state orally "all counts to run consecutive[ly]." Finally, we find no abuse of discretion in permitting several of appellant's customers to testify that they bought sewing machine models other than the one advertised.

3. Portions of appellant's testimony before the Federal Trade Commission were introduced into evidence during the trial. No objection was made by appellant.

4. Counsel for appellant and the government stipulated that this advertisement was the same in all material respects as the advertisement which ran in the Washington Post during the sixty dates listed in the indictment. It was also stipulated by the parties that the Washington Post was a daily newspaper printed and distributed in the District of Columbia.

chagrin, however, they found that only the "head"—that is, the motor and needle apparatus of a complete sewing machine— was tendered for sale and that the base and the foot pedal, needed to turn the machine on and off and to regulate the speed of the motor, had to be obtained at additional cost.

The government also offered all of appellant's grand jury testimony into evidence. Appellant had voluntarily appeared before the grand jury to demonstrate and explain the operation of the head part of the sewing machine without the base and the foot pedal.[5] At one point during the demonstration, an odor pervaded the grand jury room; appellant stated the motor was overheating and conceded that the operation of the head in this manner was neither good for the longevity of the motor, nor was it a use contemplated by the manufacturer. Appellant acknowledged responsibility for the advertising in question. In addition he stated "that since we've been notified to come down here, we do not advertise the machine head only."

In defense appellant called a Florida retailer who had been selling sewing machines for over 17 years. He testified that his purpose in coming to Washington was to observe appellant's merchandising techniques because he was "buying a lot more than me and I wanted to see how he's doing it." During cross-examination he stated that the sewing machine should not be operated without the base and the foot pedal. Another defense witness testified that approximately 6 percent of Freight Liquidators' sales during the two-month period in question was heads only. Appellant elected not to testify in his own behalf.

In a written opinion the trial judge held that the government had proved beyond a reasonable doubt that appellant had violated the statute forbidding false advertising. The trial court found that during the period alleged, appellant had knowingly caused certain advertisements to be inserted into the Washington Post; that these advertisements were false and misleading because they purported to offer for sale a complete sewing machine unit, although no such unit was tendered for purchase at the advertised price; that he utilized such false advertising with intent to sell certain goods to the public; and that he did all the above acts purposefully, deliberately, and intentionally.

■ Appellant's claim that the evidence was insufficient to support the finding that he caused the advertisements to be inserted in the Washington Post is without merit.

As we stated in Kenhan v. United States, D.C.App., 263 A.2d 253, 254 (1970):

It hardly need be said that the finder of fact—here, the court—has the function of determining the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences from proven facts. And we will not reverse a conviction on the facts as long as there is evidence which reasonably permits a finding of guilt. . . .

Accord, Patterson v. United States, D.C. App., 301 A.2d 67, 68 (1973); In re J.N. H., D.C.App., 293 A.2d 878, 880 (1972); Porter v. United States, D.C.App., 282 A. 2d 559, 560 (1971).

In the instant case it is true that the government did not produce business records from the newspaper involved. Nevertheless, appellant admitted in a hearing before the Federal Trade Commission that he was in charge of the advertising in his business. More importantly, before the grand jury he acknowledged his responsibility for the advertisements in question. Appellant's own witness, a Florida retailer, testified that he came to Washington to observe appellant's merchandising techniques. We are of the view that from these facts it may be reasonably inferred

5. Prior to his testimony appellant was advised of his Fifth and Sixth Amendment rights.

that appellant caused the advertising to be put into the Washington Post.

We also reject appellant's contention that there were not sixty offenses committed here but only one, because a course of conduct rather than the separate acts in such a course constitutes the conduct punishable under § 22–1411. Upon examination of both the legislative history and the statute, we find no reason for concluding that Congress intended to punish only a course of conduct.

Congress passed § 22–1411 with the intended purpose of preventing the dissemination of false advertising in the District of Columbia. In the accompanying House Report on the bill, the Committee on the District of Columbia stated "[i]t is believed that the title of the bill is sufficient to state the purpose of it without further comment," H.R.Rep.No.169, 64th Cong., 1st Sess. 39 (1916), and the bill was entitled an act "to prevent fraudulent advertising in the District of Columbia."

If we adopt appellant's view, however, that only a course of conduct is proscribed under § 22–1411, we would frustrate rather than effectuate this congressional purpose. Unethical businessmen, for example, would be undeterred from engaging in false advertising in the District of Columbia for prolonged periods of time resulting in thousands of dollars in additional profit, if they knew that $500 was the maximum fine that could be imposed. A $500 fine would then become nothing more than a slight business expense. This is a result Congress obviously did not intend.

In addition, the language of § 22–1411 unambiguously prohibits each display of false advertising. Section 22–1411 provides:

> It shall be unlawful . . . to insert or cause to be inserted in any newspaper, magazine, or other publication printed in the District of Columbia . . . *any false, untrue, or misleading statement, representation, or advertisement* with intent to sell, barter, or exchange any goods, wares, or merchandise. . . . [Emphasis added.]

There is nothing in the language of § 22–1411 that speaks of a course of conduct. If Congress had intended to punish one for merely engaging in false advertising, it would have expressly so stated. It is apparent therefore, in view of the purpose and plain language of § 22–1411, that Congress intended to punish each publication [6] of a false advertisement. Accordingly, we hold that the trial court properly treated each daily publication of the false advertisement during the 60-day period as a separate offense.

Affirmed.

---

6. An entire edition of a newspaper, magazine, or book should be treated as one publication.