**Pete PATTERSON, Appellant,**

v.

**UNITED STATES and District of Columbia,
Appellees.**

No. 6539.

District of Columbia Court of Appeals.

Argued Sept. 27, 1972.

Decided Feb. 27, 1973.

Michael P. Bentzen, Washington, D. C., for appellant.

Richard S. Vermeire, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Roger C. Spaeder and Peter K. Mair, Asst. U. S. Attys., were on the brief, for appellee United States.

C. Francis Murphy, Corp. Counsel, Richard W. Barton and Earl A. Gershenow, Asst. Corp. Counsels, were on the brief for appellee District of Columbia.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted of carrying a pistol without a license in violation of D. C.Code 1967, § 22–3204, and of possessing an unregistered firearm and unlawfully possessing ammunition in violation of Art. 51, Sec. 1 and Art. 53, Sec. 2, respectively, of the Police Regulations of the District of Columbia. He contends on appeal that his arrest was without probable cause; that the seizure of the weapon from his car was invalid, and that the evidence at trial was insufficient to support his conviction. We affirm.

It was adduced at the hearing on appellant's motion to suppress that on January 26, 1972 the police were notified that a white Ford Torino bearing D.C. dealer tags DA 529 had been stolen from the used car lot of Senate Motors, Inc. The car was recovered in the early morning hours of February 4, 1972 and the police teletype and computer units were notified of this fact. Approximately fifteen hours later, appellant, an employee of Senate Motors, Inc., was driving home in a light colored Dodge he had borrowed from his employer. The car bore the same license tags which had previously been attached to the stolen car. Officer Nern, a member of the Metropolitan Police Stolen Auto Interceptor Unit, was on patrol when he observed that the tags on appellant's car were listed on his "stolen sheet".[1] In the belief that he had come upon a stolen car he followed appellant, radioed for assistance and asked the radio dispatcher to run a stolen check.[2] The dispatcher reported that the vehicle was still wanted. When appellant turned into a parking lot, he was stopped and arrested. At that time Officer Nern searched under the front seat and in the glove compartment of the car, where he saw some papers and a paper bag, but removed nothing. Appellant was transported to the station house in a police vehicle while Officer Nern drove the Dodge.

When Officer Nern arrived at the station parking lot, he was informed by his partner that the car which had been reported stolen bearing the tags in question was a Ford, rather than a Dodge. Believing that "the person who had stolen this Ford had abandoned the Ford taking these license tags with him and had stolen this Dodge and put these stolen tags onto the Dodge",[3] he looked into the car and obtained the serial number from the dashboard. In a further effort to ascertain who owned the car, he opened the unlocked glove compartment to see if it contained ownership papers so that the owner could be notified. He removed the paper bag he had seen earlier and, in so doing, immediately became aware that it contained a weapon. Investigation revealed that it was a fully loaded .38 caliber revolver. In the meantime, appellant had been cleared of

1. As a member of the Stolen Auto Interceptor Unit, Officer Nern prepares a stolen sheet each day for his own use. His information is derived from the police teletype.

2. The dispatcher checked with the National Crime Information Center computer (N.C.I.C.) and with the police teletype.

3. Tr. at 8.

suspicion of auto theft by establishing to the satisfaction of the officers inside that he was authorized by his employer to drive the car. He was then charged with the weapons offenses.

At the conclusion of the hearing on the motion to suppress, the court held that there was probable cause for appellant's arrest, and that the search and seizure were reasonable. Accordingly, the motion was denied.

At trial, the government again called Officer Nern, who reiterated his earlier testimony. The gun, ammunition and certificates of no license were placed in evidence, whereupon the government rested. After the denial of a motion for judgment of acquittal, the defense called as its only witness Irving Siegel, a sales manager at Senate Motors, Inc. He testified that the automobile driven by appellant on the night of his arrest was a "loan automobile" which had been loaned to customers on sixteen occasions and to employees an unrecorded number of times between November, 1971 when the car was first put into service, and February 4, 1972, the night of appellant's arrest. He also stated that there was no general practice of checking the glove compartment when the vehicle was returned. Following this testimony and closing arguments, appellant was found guilty as charged.

■ At the outset, we reject appellant's contention that there was no probable cause for his arrest. Although the stolen car bearing the dealer tags in question had been recovered earlier on the day of appellant's arrest, and for some unexplained reason, the police records did not accurately reflect that fact, this does not mean that the officer's actions, in reliance on those records, was unreasonable. Officer Nern relied on the stolen sheet which he himself had prepared that morning. He also

checked with the police radio dispatcher who determined that the teletype and N.C. I.C. computer both listed the tags as stolen. In the officer's experience he had never before known the teletype to be wrong.

■ As has been said so often,

[P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. . . .[4]

■ Moreover,

room must be allowed for some mistakes on [the officer's] part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.[5]

Officer Nern was mistaken in his belief that appellant was driving a stolen car. However, at the moment of arrest, he clearly had probable cause to believe a crime had been committed and that appellant was the person who had committed it.

■ Similarly, we reject appellant's contention that the weapon was seized as the result of an illegal search, for we do not view the officer's actions as unreasonable. Officer Nern was trying to ascertain the name of the owner of a car he had ample reason to believe was stolen when he inadvertently came upon the gun. This situation is unlike that in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), cited by appellant, where a thorough, warrantless station house

4. Jackson v. United States, 112 U.S.App. D.C. 260, 262, 302 F.2d 194, 196 (1962).

5. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); Carter v. United States, D.C. App., 244 A.2d 483 (1968).

search of a car after its occupants had been booked on vagrancy charges was held to be too remote in time and place to be incident to arrest, and therefore unreasonable. Also inapposite are United States v. Pannell, D.C.App., 256 A.2d 925 (1969) and Pigford v. United States, D.C.App., 273 A.2d 837 (1971), where under the guise of making station house inventories, the police made extensive exploratory searches of vehicles over which they did not lawfully have custody, while the drivers were in custody.

The Supreme Court has distinguished a warrantless search of an automobile from that of a home or office, approving searches without a warrant where there is probable cause to believe that an automobile contains articles that police officers are entitled to seize. Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Moreover, in one instance, that Court assumed, in dicta, that where the police have probable cause to believe that a car is stolen, a search for evidence of that fact is reasonable. Preston v. United States, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Such searches have been approved when made on the scene of the arrest, United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970); State v. Rys, 186 Neb. 341, 183 N.W.2d 253 (1971), and Chambers v. Maroney, *supra,* allows them even at the station house. So, here, where Officer Nern, having cause to believe the car to be stolen, was looking only for evidence of ownership and inadvertently came upon the weapon, there was no unreasonable search or seizure violative of the Fourth Amendment.

■ Finally, we must disagree with appellant that the evidence was insufficient to support his conviction. Appellant's argument is based on the fact that many other people had previously driven the vehicle in question and that there was no general practice of cleaning it out upon its return. He alleges that without further evidence, such as fingerprints, the government failed to prove beyond a reasonable doubt that he had knowledge of the gun's presence. It has been held by this court that the government has no affirmative duty to do fingerprint tests, and there is no indication in the record before us that such tests were requested by the defense.[6] Additionally, in deciding whether the evidence was sufficient, we must make full allowance for the right of the trier of fact to determine credibility, weigh the evidence, and draw justifiable inferences of fact, "[a]nd we will not reverse a conviction on the facts as long as there is evidence which reasonably permits a finding of guilt."[7] The judgment of the court below is therefore,

Affirmed.

---

6. Williams v. United States, D.C.App., 237 A.2d 539 (1968).

7. Kenhan v. United States, D.C.App., 263 A.2d 253, 254 (1970). *See also* Hill v. District of Columbia, D.C.App., 264 A.2d 145 (1970).