137 F.3d 1142
 98 Cal. Daily Op. Serv. 1531, 98 Daily Journal
D.A.R. 2153
Marlyn L. ROHDE; Mark E. Rohde, Plaintiffs-Appellants,
v.
CITY OF ROSEBURG, an Oregon municipal corporation; Tommy A.
Sorenson, Defendants-Appellees.
 No. 94-35805.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 9, 1997.
Decided March 4, 1998.
 
 Thad M. Guyer, Medford, Oregon, for plaintiffs-appellants.
 Robert E. Franz, Jr., Matt Farmer, Springfield, Oregon, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon; John P. Cooney, Magistrate Judge, Presiding. D.C. No. CV-92-06314-01-MRH.
 Before: CANBY, T.G. NELSON, and KLEINFELD, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 This appeal from the dismissal of a 42 U.S.C. § 1983 action presents the question whether police improperly arrested both the driver of a vehicle and its passenger on the basis of a police report indicating that the vehicle had been stolen. We conclude that the officer had probable cause to arrest the driver of the vehicle but not the passenger.
 
 BACKGROUND
 
 2
 When Roseburg, Oregon Police Officer Tom McFadden stopped Mark Rohde for speeding, Mr. Rohde was unable to produce proof of vehicle registration and instead presented a certificate of title. The name on the title, however, was neither that of Mr. Rohde nor that of his passenger and mother, Marlyn Rohde. Officer McFadden radioed his dispatcher, who informed him that Medford, Oregon police had listed the vehicle as stolen. Officer McFadden immediately informed Mr. Rohde that he was under arrest, handcuffed him, and placed him in the back of his patrol car. Roseburg Police Officer Anthony Dimare then arrived on the scene. Together, he and Officer McFadden asked Mrs. Rohde to step out of the car and placed her under arrest. They handcuffed her and placed her in Officer Dimare's patrol car.
 
 
 3
 Mr. Rohde protested his innocence to the officers, prompting them to investigate further. They contacted the Medford Police, who confirmed the stolen vehicle report but concluded "there was obviously a mistake somewhere down the line." They advised the Roseburg Police to release the Rohdes, which they did. The total time the Rohdes spent under arrest was no more than 5 or 6 minutes. Eventually, it was discovered that a car dealer had reported the vehicle stolen three days before he sold it to Mr. Rohde. In the interim, a salesman had seen the vehicle on the street and driven it back to the dealership, but the dealer never informed the Medford Police that it had been recovered.[1]
 
 
 4
 The Rohdes sued the City of Roseburg for false arrest under 42 U.S.C. § 1983. The District Court granted the City's motion for summary judgment, finding that the stolen vehicle report and lack of registration or title in Mr. Rohde's name gave the Roseburg Police probable cause for the arrest. The Rohdes appeal.
 
 DISCUSSION
 
 5
 As an initial matter, the detention of the Rohdes cannot be characterized as a Terry stop rather than an arrest. Under the rule of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer may always order the driver and passenger out of a vehicle during a traffic stop, see Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), and may even handcuff and move both if he reasonably fears for his safety, see Allen v. City of Los Angeles, 66 F.3d 1052, 1056-57 (9th Cir.1995). In this case, however, the restraint of the Rohdes necessarily crossed the line from investigatory stop to arrest because both were told that they were under arrest. The officers' actions therefore constituted an arrest, which must be justified by probable cause. United States v. Martin, 509 F.2d 1211, 1213 (9th Cir.1975).
 
 
 6
 In order to have probable cause to arrest the Rohdes, the officers needed to "know reasonably trustworthy information sufficient to warrant a prudent person in believing" that each has committed a crime. United States v. Butler, 74 F.3d 916, 920 (9th Cir.1996) (quoting United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990)). We look to the totality of the circumstances known to the officers at the time to determine whether probable cause existed. Id. We review de novo the district court's determination that the officers had probable cause to arrest the Rohdes. United States v. Wanless, 882 F.2d 1459, 1465 n. 12 (9th Cir.1989).
 
 
 7
 In this case, Officer McFadden knew that Mr. Rohde lacked proof of registration, lacked title to the vehicle in his own name, and he knew that the vehicle had been reported stolen. Like most jurisdictions, Oregon makes it a felony to operate or ride in a vehicle without the consent of the owner. Or.Rev.Stat. § 164.135. On the basis of similar statutes, we have held that a stolen vehicle report alone furnishes sufficient basis to arrest the driver. Lipton v. United States, 348 F.2d 591, 594 (9th Cir.1965). Other courts have found that a stolen vehicle report justifies the arrest of the driver even if the report is later discovered to be erroneous. In Patterson v. United States, 301 A.2d 67 (D.C.1973), the arresting officer also relied on a dispatcher's confirmation that the vehicle had been listed as stolen. The court found that despite the error in the listing, the officer "clearly had probable cause to believe a crime had been committed and that [the driver] was the person who had committed it." Id. at 69.
 
 
 8
 We agree with the rulings of Lipton and Patterson. When a person operates an automobile, he is effectively in possession of the vehicle and can reasonably be presumed aware of its ownership. It is unlikely that a thief would casually lend a stolen vehicle to others; it is probable that the driver of a stolen car is either the thief himself or is aware that the car has been stolen. If an officer has reliable information, such as a police report, indicating that the vehicle has been stolen, he thus has probable cause to believe that the driver has committed the crime of either stealing the car or knowingly operating a stolen vehicle. In this case, Mr. Rohde did not present any proof of ownership that would rebut the evidence that the vehicle had been stolen. Officer McFadden thus had probable cause to arrest Mr. Rohde.
 
 
 9
 The reasoning that allows the arrest of Mr. Rohde, however, does not extend to Mrs. Rohde. She was merely a passenger in the vehicle, and cannot be presumed to be aware of its unexcused absence from its owner's possession. It is less than likely that a casual passenger would inquire into the ownership of a vehicle, or that the driver would divulge the fact that the vehicle had been stolen to such a passenger. Absent some indication of a relationship more substantial than that of driver and passenger, the arresting officer cannot simply impute the driver's presumptive awareness of the vehicle's legal condition to the passenger. In this case, Officers McFadden and Dimare did not know that the driver and passenger had any other connection to one another, and they had no other basis to conclude that Mrs. Rohde was aware that the vehicle had been stolen. They lacked probable cause to believe that Mrs. Rohde knew of the car's legal status, and thus lacked probable cause to arrest her.
 
 
 10
 We affirm the grant of summary judgment to the City of Roseburg with regard to Mr. Rohde, we reverse with regard to Mrs. Rohde, and we remand to the district court for further consideration of Mrs. Rohde's § 1983 claim. The parties will bear their own costs on appeal.
 
 
 11
 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 
 
 12
 KLEINFELD, Circuit Judge, partially concurring and partially dissenting.
 
 
 13
 I concur in the majority opinion with respect to Marlyn L. Rohde, but respectfully dissent with respect to Mark E. Rohde.
 
 
 14
 The officer reasonably stopped Mr. Rohde for speeding, and reasonably stopped him in the Terry sense for possessing a stolen car. Whether he could arrest Mr. Rohde depended, we agree, on whether, looking to the totality of circumstances, reasonably trustworthy information would warrant a prudent person in believing that Mr. Rohde had stolen the car.
 
 
 15
 Before the arrest, but after the stop, here is what the officer knew:
 
 
 16
 1. the car was listed in police records as reported stolen;
 
 
 17
 2. Mr. Rohde had handed him the title to the vehicle when he had asked for the registration.
 
 
 18
 After the officer arrested Mr. Rohde, he talked to him, and Mr. Rohde insisted he had bought the car. He also told the officer that the bill of sale was in the glove compartment. The officer looked, and a standard Department of Motor Vehicles form bill of sale was there. It was signed by the salesman with Mr. Rohde's name at the top as the buyer. That observation led the officer to inquire further and release Mr. Rohde.
 
 
 19
 "Totality of the circumstances" is a two way street. Driving a stolen car may amount to probable cause that the driver is the thief, but the officer has to consider the "totality of the circumstances," not just the stolen car report. Once the officer was handed the title, the totality of circumstances included not only a reasonably trustworthy report that the car was stolen, but also a reasonably trustworthy document suggesting that it was not. Titles to cars are ordinarily not in the glove compartment except perhaps during the interval before registrations are issued. Once handed the title, a prudent person would ask another question, such as "can you prove this is your car?" before arresting the driver.
 
 
 20
 Under Oregon law, when a person buys a car, the transferee is obligated to apply for registration and for title. Ore.Rev.Stat. §§ 803.092, 803.370. In the ordinary course, there would be a period of time when the buyer would not yet have the registration and title in his own name. Unlike Lipton v. United States, 348 F.2d 591 (9th Cir.1965), the totality of circumstances in this case obviated suspicion instead of adding to it. In Lipton, the driver had no license, claimed to have bought the car from his aunt but became evasive when asked where she lived, and "broke and ran" for two blocks when allowed to walk around the car to get identification out of the glove compartment.
 
 
 21
 The officer could have gotten to the truth without turning the Terry stop into an arrest, as easily as he did within minutes after the arrest. And even though the arrest lasted only a few minutes, the difference matters. Almost all of us have been stopped by police while driving, and there is no social or vocational stigma on account of it. But there is a considerable disadvantage in saying that one has been arrested. Whether one is seeking elective office, marriage, or a job, that one has been arrested may be a considerable obstacle. Many people will naturally believe that with that much smoke, there must have been some fire. Arrest itself is likely to be very upsetting the first time.
 
 
 22
 The police officer should have given Mr. Rohde a chance to explain, before arresting him. I would reverse.
 
 
 
 [1]
 The district court did not reach the question whether the arrests were effected pursuant to an official policy or custom of the City, which is now the sole remaining defendant. See Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). We, too, do not address the issue