UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff - Appellee,<br><br>     v.<br><br>JUAN CARLOS GARCIA-RIVAS,<br><br>          Defendant - Appellant. | No. 11-10556<br><br>D.C. No. 4:11-cr-00043-CKJ-HCE-1<br>District of Arizona,<br>Tucson<br><br>ORDER |

Before: WALLACE, FARRIS, and BYBEE, Circuit Judges.

The memorandum disposition and partial dissent filed on February 8, 2013 are withdrawn. A replacement memorandum disposition and a replacement partial dissent are being filed concurrently with this Order. With the revisions made to the memorandum disposition, the Petition for Panel Rehearing filed on February 19, 2013 is DENIED. No further petitions for panel rehearing or petitions for rehearing en banc will be entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10556 |
| Plaintiff - Appellee, | D.C. No. 4:11-cr-00043-CKJ-HCE-1 |
| v. | |
| JUAN CARLOS GARCIA-RIVAS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted January 15, 2013
San Francisco, California

Before: WALLACE, FARRIS, and BYBEE, Circuit Judges.

Juan Carlos Garcia-Rivas appeals his conviction under 8 U.S.C. § 1326(a),

enhanced by 8 U.S.C. § 1326(b)(1), for illegally reentering the United States after

having previously been deported. We have jurisdiction pursuant to 28 U.S.C. §

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1291.  We affirm in part, vacate in part, and remand for further proceedings consistent with this disposition.

The district court did not err in concluding that it was legally irrelevant that Garcia-Rivas was trying to leave the country when he was stopped and detained by Customs and Border Protection (CBP).  Garcia-Rivas may have been able to avoid prosecution for illegal reentry by leaving the country before being caught, *see United States v. Ayala*, 35 F.3d 423, 425 (9th Cir. 1994), but the mere fact that Garcia-Rivas was headed toward the border with the intent to leave the country when he was apprehended does not undermine the conclusion that he was "found in" the country after illegally reentering, 8 U.S.C. § 1326(a)(2).

Nor did the district court err in concluding that Garcia-Rivas was provided an adequate *Miranda* warning.  Providing "different and conflicting sets of warnings" to an individual may undermine the adequacy of a *Miranda* warning, *United States v. San Juan-Cruz*, 314 F.3d 384, 387–88 (9th Cir. 2002), but the warnings here were not conflicting.  Garcia-Rivas was meaningfully advised of his *Miranda* rights, *see United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989), and he was not affirmatively misled, *see San Juan-Cruz*, 314 F.3d at 387.

The district court did, however, err in its consideration of whether there was probable cause to arrest Garcia-Rivas.  Though law enforcement officers protecting

2

our border have more leeway than law enforcement officers in other settings with regard to searches and detentions, probable cause to suspect criminal activity is still generally required for arrest. *See United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2003); *United States v. Bravo*, 295 F.3d 1002, 1005–06 (9th Cir. 2002).[1] The district court's conclusion that there was probable cause to suspect criminal activity was based on three facts: (1) that Garcia-Rivas told CBP that he was in the country illegally, (2) that Garcia-Rivas seemed nervous when stopped by CBP, and (3) that Garcia-Rivas refused to provide identification when asked to do so by CBP. Applying the "totality of the circumstances" test for determining whether there was probable cause to suspect criminal activity, *see John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008), we find these facts insufficient to support a legal arrest.

---

[1] Federal immigration officers have the power to arrest an alien without probable cause to suspect criminal activity if they "believe that the alien so arrested is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and is likely to escape before a warrant can be obtained for [the alien's] arrest" pursuant to 8 U.S.C. § 1357(a)(2). Because the Government did not argue until its petition for rehearing that the arrest here was legal based on this statutory provision, that argument is waived. *See Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992). The Government apparently did not raise this argument before the district court either. We offer no view on whether the Government may raise this argument on remand.

Our law is clear that illegal presence in the country is not sufficient to support a finding of probable cause to suspect criminal activity. Any confusion on this issue was eliminated by our opinion in *Martinez-Medina v. Holder*, 673 F.3d 1029 (9th Cir. 2011). In *Martinez-Medina*, we affirmed that the law of the circuit, previously set forth in *Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir. 1983), *overruled in part on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc), is that "an alien who is illegally present in the United States . . . [commits] only a civil violation" and that "admission of illegal presence . . . does not, without more, provide probable cause" to suspect criminal activity. *Martinez-Medina*, 673 F.3d at 1036 (quoting *Gonzales*, 722 F.2d at 476–77). We did not equivocate on these points, asserting that they "were, and remain, the law of the circuit, binding on law enforcement officers." *Id.*

Nervous behavior is a factor that may contribute to a finding of probable cause. *See, e.g.*, *United States v. Lim*, 984 F.2d 331, 337 (9th Cir. 1993). But, depending on the circumstances, nervous behavior, even considered together with other factors that could be indicative of the commission of a crime, may not be sufficient to establish probable cause. *See, e.g.*, *Florida v. Royer*, 460 U.S. 491, 507 (1983); *cf. United States v. I.E.V.*, No. 11-10337, 2012 WL 5937702, at *6 (9th Cir. Nov. 28, 2012) ("[W]e join with our sister circuits that have refused to

4

allow police officers to justify a *Terry* search based on mere nervous or fidgety conduct and touching of clothing."). Similarly, failure to produce identification is a factor that may contribute to a finding of probable cause, but failure to produce identification is not necessarily sufficient to establish probable cause. *See Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094–95 (9th Cir. 2006). Here, as an alien illegally present in this country who had just been stopped by CBP, Garcia-Rivas would of course be nervous, and it is not surprising that he would be unable or unwilling to produce identification, whether he had committed a crime or not. Given that CBP knew that Garcia-Rivas was in the country illegally at any possible time of arrest, Garcia-Rivas's nervous behavior and failure to produce identification should not have suggested to CBP at the time of arrest that Garcia-Rivas had committed a crime.

The district court erred in holding that Garcia-Rivas's admission of illegal presence, his nervous behavior, and his refusal to produce identification gave CBP probable cause to suspect criminal activity.

Thus, we vacate the district court's decision with regard to probable cause. Because the district court held that Garcia-Rivas's admission of illegal presence, his nervous behavior, and his refusal to produce identification during his initial conversation with the CBP satisfied the probable cause requirement, the district

5

court did not need to determine when Garcia-Rivas was actually arrested. We leave this determination, along with consideration of whether there may have been probable cause to suspect criminal activity at the time of arrest due to facts other than those discussed above, to the district court on remand. Assuming there was not probable cause at the time of arrest, the district court will also need to determine the impact of the lack of probable cause on the inclusion of the evidence presented in support of Garcia-Rivas's conviction, and ultimately on the conviction itself.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

United States v. Garcia-Rivas, 11-10556

WALLACE, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that Garcia-Rivas's subjective intent to leave the country did not undermine the conclusion that he was "found in" the United States for purposes of 8 U.S.C. § 1326(a). I also concur in the majority's conclusion that Garcia-Rivas received adequate *Miranda* warnings. Nevertheless, I respectfully dissent from the majority's probable cause analysis.

The majority explains that unlawful presence alone is insufficient to support a conclusion of probable cause. The majority then discounts Garcia-Rivas's nervousness and failure to produce identification.

While I do not disagree that each factor identified by the majority—unlawful presence, nervousness, and failure to produce identification—may not be sufficient *alone* to provide probable cause, I conclude that the majority's analysis does not adequately assess the combination of factors that faced Officer Falcon—the initial officer confronting Garcia-Rivas—and fails to give weight to Officer Falcon's experience as a border agent.

"[B]order agents . . . need probable cause to make a warrantless arrest of an individual." *United States v. Hernandez*, 322 F.3d 592, 597 (9th Cir. 2002). "Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that

[the defendant] had committed a crime.'" *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).

Officer Falcon stopped Garcia-Rivas as he walked southbound towards Mexico pursuant to lawful border stop. *See United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008) ("Because searches at the international border of both inbound and outbound persons or property are conducted 'pursuant to the long-standing right of the sovereign to protect itself,' they generally require neither a warrant nor individualized suspicion"). As he spoke with Garcia-Rivas, Officer Falcon observed that Garcia-Rivas appeared "extremely nervous." While from a cold record it may seem natural for one stopped by border patrol officers to appear nervous, Garcia-Rivas's "extreme[] nervous[ness]" was triggered, it appears, by Officer Falcon's inquiry as to whether Garcia-Rivas had any "weapons, ammo, and currency over $10,000." Because of this nervousness, Officer Falcon suspected that Garcia-Rivas was lying to him about not having weapons or money. Thereafter, Officer Falcon asked Garcia-Rivas for identification, which Garcia-Rivas could not provide. Building on what he then knew, Officer Falcon asked Garcia-Rivas whether he was lawfully in the country. Garcia-Rivas indicated that he was illegally present in the United States.

Far from merely suggesting that Garcia-Rivas did not currently have permission to be in the United States, Officer Falcon testified that in his experience—seven and

2

a half years as a Customs and Border Protection Officer—Garcia-Rivas's conduct and answers suggested that he may have "either carr[ied] narcotics into the U[nited] S[tates]" or "guid[ed] people into the U[nited] S[tates]" and did not want to be identified as he left the country. Based on this accumulated knowledge, Officer Falcon took Garcia-Rivas to "secondary" and placed him in a cell.

It is not apparent to me that the district court concluded that Officer Falcon had probable cause to arrest solely because Garcia-Rivas admitted to being unlawfully present. Instead, the record suggests otherwise. The district court recounted all of the above information and concluded that Officer Falcon had probable cause to arrest Garcia-Rivas. Thus, there is no reason to focus the probable cause analysis as to whether there could have been probable cause to arrest for illegal presence alone.

Taking this accumulated evidence as a whole, coupled with Officer Falcon's experience as to the significance of such evidence, *see United States v. Salvador*, 740 F.2d 752, 757 (9th Cir. 1984) ("Probable cause requires 'a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life'") (internal quotation marks omitted); *see also United States v. Strong*, 552 F.2d 138, 141–42 (5th Cir. 1977) (ascertaining the presence of probable cause based on "nervousness on the part of the [detainee]," a detainee's questionable credibility, and a border patrol officer's experience), I am not convinced that the district court erred

3

in concluding that there was a "fair probability" that Garcia-Rivas had committed a crime. I would therefore not vacate and remand for further fact finding on this issue.

Nor do I find fault with the officers taking Garcia-Rivas to a "secondary" place where computers are available to search for possible earlier infractions. Thus, I am inclined to conclude that at worst, the officers were in an authorized border stop and could await final determination at the nearby secondary station where computers could be checked. *See generally United States v. Martinez-Fuerte*, 428 U.S. 543, 562–63 (1976) (holding that border officers have "wide discretion" to stop, question, and refer individuals to secondary investigation at border checkpoints). Under this analysis, the arrest did not occur until the computers had discovered his prior deportation and the detention went beyond "holding" for border investigation to an arrest. At that point, there was no doubt about probable cause. *See* 8 U.S.C. § 1326(a) (providing the elements of the offense).