WALLACE, Senior Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s conclusion that Garcia-Rivas’s subjective intent to leave the country did not undermine the conclusion that he was “found in” the United States for purposes of 8 U.S.C. § 1326(a). I also concur in the majority’s conclusion that Garcia-Rivas received adequate Miranda warnings. Nevertheless, I respectfully dissent from the majority’s probable cause analysis.
The majority explains that unlawful presence alone is insufficient to support a conclusion of probable cause. The majority then discounts Garcia-Rivas’s nervousness and failure to produce identification.
While I do not disagree that each factor identified by the majority — unlawful presence, nervousness, and failure to produce identification — may not be sufficient alone to provide probable cause, I conclude that the majority’s analysis does not adequately assess the combination of factors that faced Officer Falcon — the initial officer confronting Garcia-Rivas — and fails to give weight to Officer Falcon’s experience as a border agent.
“[Bjorder agents ... need probable cause to make a warrantless arrest of an individual.” United States v. Hernandez, 322 F.3d 592, 597 (9th Cir.2002). “Probable cause exists when, ‘under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.’ ” United States v. Garza, 980 F.2d 546, 550 (9th Cir.1992).
Officer Falcon stopped Garcia-Rivas as he walked southbound towards Mexico pursuant to lawful border stop. See United States v. Seljan, 547 F.3d 993, 999 (9th Cir.2008) (“Because searches at the international border of both inbound and outbound persons or property are conducted ‘pursuant to the long-standing right of the sovereign to protect itself,’ they generally require neither a warrant nor individualized suspicion”). As he spoke with Garcia-Rivas, Officer Falcon observed that Garcia-Rivas appeared “extremely nervous.” While from a cold record it may seem natural for one stopped by border patrol officers to appear nervous, Garcia-Rivas’s “extreme[] nervous[ness]” was triggered, it appears, by Officer Falcon’s inquiry as to whether Garcia-Rivas had any “weapons, ammo, and currency over $10,000.” Because of this nervousness, Officer Falcon suspected that Garcia-Rivas was lying to him about not having weapons or money. Thereafter, Officer Falcon asked Garcia-Rivas for identification, which Garcia-Rivas could not provide. Building on what he then knew, Officer Falcon asked Garcia-Rivas whether he was lawfully in the country. Garcia-Rivas indicated that he was illegally present in the United States.
Far from merely suggesting that Garcia-Rivas did not currently have permis *511 sion to be in the United States, Officer Falcon testified that in his experience— seven and a half years as a Customs and Border Protection Officer — Garcia-Rivas’s conduct and answers suggested that he may have “either carried] narcotics into the U[nited] S[tates]” or “guid[ed] people into the U[nited] S[tates]” and did not want to be identified as he left the country. Based on this accumulated knowledge, Officer Falcon took Garcia-Rivas to “secondary” and placed him in a cell.
It is not apparent to me that the district court concluded that Officer Falcon had probable cause to arrest solely because Garcia-Rivas admitted to being unlawfully present. Instead, the record suggests otherwise. The district court recounted all of the above information and concluded that Officer Falcon had probable cause to arrest Garcia-Rivas. Thus, there is no reason to focus the probable cause analysis as to whether there could have been probable cause to arrest for illegal presence alone.
Taking this accumulated evidence as a whole, coupled with Officer Falcon’s experience as to the significance of such evidence, see United States v. Salvador, 740 F.2d 752, 757 (9th Cir.1984) (“Probable cause requires ‘a reasonable belief, evaluated in light of the officer’s experience and the practical considerations of everyday life”) (internal quotation marks omitted); see also United States v. Strong, 552 F.2d 138, 141-42 (5th Cir.1977) (ascertaining the presence of probable cause based on “nervousness on the part of the [detainee],” a detainee’s questionable credibility, and a border patrol officer’s experience), I am not convinced that the district court erred in concluding that there was a “fair probability” that Garcia-Rivas had committed a crime. I would therefore not vacate and remand for further fact finding on this issue.
Nor do I find fault with the officers taking Garcia-Rivas to a “secondary” place where computers are available to search for possible earlier infractions. Thus, I am inclined to conclude that at worst, the officers were in an authorized border stop and could await final determination at the nearby secondary station where computers could be checked. See generally United States v. Martinez-Fuerte, 428 U.S. 543, 562-63, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (holding that border officers have “wide discretion” to stop, question, and refer individuals to secondary investigation at border checkpoints). Under this analysis, the arrest did not occur until the computers had discovered his prior deportation and the detention went beyond “holding” for border investigation to an arrest. At that point, there was no doubt about probable cause. See 8 U.S.C. § 1326(a) (providing the elements of the offense).