**HELL'S ANGELS MOTORCYCLE CORPORATION, a California corporation; The Oakland Charter of the Hell'S Angels Motorcycle Club, Plaintiffs–Appellants,**

v.

**Timothy McKINLEY, Defendant–Appellee.**

No. 02–15215.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 2003.

Opinion Filed Jan. 6, 2004.

Amended Feb. 6, 2004.

Joseph J. Wiseman, Petaluma, CA, for the plaintiffs-appellants.

Scott T. Nonaka, Assistant United States Attorney (briefed); Tracie L.

Brown, Assistant United States Attorney (argued), San Francisco, CA, for the defendant-appellee.

Before JOHN T. NOONAN, JOHNNIE B. RAWLINSON, and JAY S. BYBEE, Circuit Judges.

## ORDER

The opinion filed on January 6, 2004, is hereby amended. The Clerk shall file the attached amended opinion.

## OPINION

RAWLINSON, Circuit Judge:

## I. OVERVIEW

FBI Special Agent McKinley executed an administrative subpoena to search documents previously seized from the Hell's Angels Motorcycle Club pursuant to a search warrant. The district court dismissed the Hell's Angels' *Bivens* action against Agent McKinley, finding that he was entitled to qualified immunity. We agree with the district court's judgment in favor of Agent McKinley, because the original seizure of the materials substantially reduced the Hell's Angels' reasonable expectation of privacy in the materials.[1]

## II. FACTUAL and PROCEDURAL BACKGROUND

While investigating a murder and robbery, police in Monterey County, California, sought information on the activities of the Oakland Hell's Angels. Relying on an affidavit prepared by James D. Brown, an investigator with the Monterey district attorney's office, a municipal court judge issued a warrant to search the Hell's Angels' Oakland clubhouse.

The warrant was broad,[2] authorizing police to seize security files and dossiers with information on members, notes and minutes of club meetings; documents containing information related to the expulsion, disappearance and possible murder of particular individuals; computers and electronic storage devices; and "items tending to show a confederation of individuals known as the Hell's Angels Motorcycle Club."

Police excluded everyone except law-enforcement personnel from the clubhouse for over six hours, ultimately removing two commercial truckloads of property. A thirteen-page inventory with general descriptions of the seized items was compiled, and the items were subsequently transferred to a Monterey County warehouse. None of the seized items were used in prosecuting the robbery and murder.

Agent McKinley subsequently presented the county with a federal administrative subpoena for certain items seized from the Hell's Angels' clubhouse.[3] In turn, a dep-

---

1. We may affirm on any basis finding support in the record. *Bothke v. Fluor Engineers & Constructors, Inc.*, 834 F.2d 804, 809 (9th Cir.1987).

2. Agent McKinley advised local law enforcement officials to obtain broad search warrants so the FBI could examine the seized materials at a later date.

3. The administrative subpoena was issued pursuant to 21 U.S.C. § 876(a), which provides, in part:

 In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpena [sic] witnesses, compel the attendance and testimony of witnesses, and require the pro-

uty district attorney submitted, to the same judge who issued the original warrant, a petition requesting temporary release of the materials without notice to the Hell's Angels. Even before the judge signed the transfer order, local officials, including Mr. Brown, delivered the requested items to Agent McKinley, along with two computers that were not listed in the subpoena.

Agent McKinley and other federal agents copied some of the transferred documents and returned them to the police. Although most of the Hell's Angels' belongings were returned to them a few weeks later, Agent McKinley allegedly released some of the information to the public, which made its way into a book about the Hell's Angels.

In its initial Complaint, the Hell's Angels asserted statutory and constitutional claims against Monterey County, the Cities of Oakland and San Jose, various local officials, and several FBI agents. Following dismissal of that pleading, the Hell's Angels filed a first amended complaint deleting the City of Oakland and some of the individual defendants.

After another dismissal, the district court ordered the Hell's Angels to file a Second Amended Complaint. *See Hell's Angels Motorcycle Corp. v. County of Monterey, et al.*, 89 F.Supp.2d 1144, 1154 (N.D.Cal.2000). The Second Amended Complaint named as defendants the County of Monterey, James D. Brown, and Special Agent McKinley, and asserted claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bu-*

*reau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The § 1983 claims were predicated upon an invasion of privacy and "deliberate indifference" to Plaintiffs' rights. The *Bivens* claim alleged that Agent McKinley: (1) secretly conspired with other defendants to obtain an overbroad search warrant so the seized items could be made available to the federal agents; (2) deprived the Hell's Angels of their property in violation of their constitutional rights; and (3) caused the publication of private communications.

The district court ruled that the Hell's Angels had adequately stated a claim based on the alleged disclosure of seized documents to the public, and thus denied Agent McKinley's motion to dismiss the invasion of privacy claim. The district court also dismissed the Hell's Angels' conspiracy claim for failure to meet the heightened pleading standard. While the district court concluded that the Hell's Angels had sufficiently alleged the deprivation of a constitutional right in the failure to receive notice of, and an opportunity to challenge, the administrative subpoena, it held that this right was not clearly established at the time of the alleged deprivation, and thus Agent McKinley was entitled to qualified immunity.

Hell's Angels filed a Third Amended Complaint, which was dismissed without prejudice. Rather than file a fourth complaint, the Hell's Angels sought and received a final judgment. They now appeal only the grant of qualified immunity to Agent McKinley.[4]

---

duction of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

4. Although the Plaintiffs included the invasion of privacy claim in their Third Amended Com-

plaint, they implicitly abandoned the claim by asking the district court to enter judgment in favor of the Defendants on the entire Complaint. *See Geraci v. Homestreet Bank*, 347 F.3d 749, 752 (9th Cir.2003).

## III. STANDARD OF REVIEW

 We review *de novo* the district court's decision granting qualified immunity to Agent McKinley. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.2002). We may affirm on any basis finding support in the record. *Bothke v. Fluor Engineers & Constructors, Inc.*, 834 F.2d 804, 809 (9th Cir.1987).

## IV. DISCUSSION

 Agent McKinley's immunity from suit rests on a two-step inquiry. First, we must determine "whether, in the light most favorable to the plaintiffs, the facts alleged show" that Agent McKinley's "conduct violated a constitutional right." *Ganwich v. Knapp*, 319 F.3d 1115, 1119 (9th Cir.2003), *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If we determine that Agent McKinley violated a constitutional right, we must next decide "whether that right was 'clearly established' when viewed in the context of the case." *Id.* (citation and internal quotation marks omitted). If no constitutional violation is found, we need not proceed to the second step in the *Saucier* analysis. *Johnson v. California*, 321 F.3d 791, 796, 807 (9th Cir.2003).

In reaching its determination that the Hell's Angels sufficiently alleged a violation of their Fourth Amendment rights, the district court cited *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), which held in the context of an IRS investigation, that "both parties summoned and those affected by a disclosure may appear or intervene before the District Court and challenge the summons by asserting their constitutional or other claims." *Id.* at 445, 84 S.Ct. 508 (citations omitted). Examining *In re Cole*, 342 F.2d 5, 6 (2d Cir.1965), the district court also noted the distinction between a subpoena directed toward property owned by a third party and one directed toward property belonging to the target of the investigation, but possessed by a third party. *Hell's Angels Motorcycle Corp.*, 89 F.Supp.2d at 1152. Reasoning from these IRS cases that "the Fourth Amendment places significant limits on administrative subpoenas," the district court concluded that the Hell's Angels' proprietary interest in their belongings seized by the police entitled them to notice and an opportunity to object to the subpoena. *Id.* at 1153. According to the district court, the lack of notice and opportunity to object to the subpoena violated the Hell's Angels' constitutional rights. *Id.* However, the district court's ruling did not address the effect of the prior lawful seizure of the documents, a crucial distinction between this case and *Reisman*.

The only decision of this circuit involving § 876(a) provides no guidance on whether the Hell's Angels had a reasonable expectation of privacy in the seized materials. *See United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir.1998), *amended by*, 161 F.3d 1195 (9th Cir.1998), *abrogated on other grounds by*, *United States v. Hankey*, 203 F.3d 1160, 1169 and n. 7 (9th Cir.2000). In *Plunk*, the subpoenaed materials were telephone records, in which the subject of the investigation clearly had no reasonable expectation of privacy. And similar to the *Reisman* case, *Plunk* involved no issue of a prior lawful seizure.

However, in somewhat analogous cases, we have held that personal items seized and examined by police during searches incident to a lawful arrest are not protected from further warrantless searches by police. *See United States v. Holzman*, 871 F.2d 1496, 1505 (9th Cir.1989) (overruled on other grounds in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)); *see also United States v.*

*Johnson,* 820 F.2d 1065, 1071–1072 (9th Cir.1987).

*Holzman* involved a circumstance where the police searched a suspect's address book a second time at the police station after the suspect was arrested. Rejecting a challenge to the subsequent search, we ruled that the lawfulness of the initial search and the suspect's consequently reduced expectation of privacy validated the later search. *Holzman,* 871 F.2d at 1505; *see also United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir.1983) (upholding a subsequent search under similar circumstances).

In *Johnson,* police arrested the defendant for driving under the influence of alcohol, and seized currency found in his jacket pocket. Some time later, at the request of an FBI agent, the police removed the seized currency from its envelope and checked the serial numbers on the bills. We held that "once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant." 820 F.2d at 1072 (citation omitted).

These same principles transfer readily to the items seized from the Hell's Angels' clubhouse. The Hell's Angels do not challenge on appeal the lawfulness of the initial search or seizure. As a result, Agent McKinley's subsequent examination of the previously seized items is akin to the searches we approved in *Holzman, Johnson* and *Burnette.* With that backdrop in mind, we are persuaded that the Hell's Angels' reasonable expectation of privacy in the documents was substantially reduced by the lawful seizure of the documents by the Monterey police officials. *See Holzman,* 871 F.2d at 1505.

Our determination that the Hell's Angels' privacy interest in the seized docu-

ments was not substantial enough to require notice and an opportunity to contest the subpoena ends our inquiry under *Saucier. See Johnson,* 321 F.3d at 796, 807. Agent McKinley's subsequent search of these documents resulted in no constitutional deprivation. Thus, Agent McKinley was entitled to a dismissal of the case against him. *See id.* (holding that if the government official's conduct does not violate a constitutional right, we never reach the qualified immunity issue).

## V. CONCLUSION

We conclude that no constitutional violation occurred in this case because the Hell's Angels' reasonable expectation of privacy in documents that were the subject of a previous lawful seizure was insufficient to require notice and an opportunity to contest the subpoena. We have considered and rejected the Hell's Angels' other arguments. The judgment of the district court in favor of Agent McKinley is **AFFIRMED.**