# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHEN BURRELL,
              *Plaintiff-Appellant,*

          v.

MIKE MCILROY, GLEN C. RECTOR,
JEFF THORPE,
              *Defendants-Appellees.*

No. 02-15114

D.C. No.
CV-99-01612-KJD

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
September 13, 2004—San Francisco, California

Filed September 19, 2005

Before: James L. Oakes,* Andrew J. Kleinfeld, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Oakes

---

*The Honorable James L. Oakes, Senior United States Circuit Judge for
the Second Circuit, sitting by designation.

13455

**COUNSEL**

Plaintiff-appellant was represented by Steven A. Engel and Susan Kearns of Kirkland & Ellis LLP of Washington, D.C.

Defendants-appellees were represented by Peter Angulo of Las Vegas, Nevada, at oral argument, and by Thomas D. Dilliard, Jr., and Lilli C. Hitt of Rawlings, Olson, Cannon, Gormley & Desruisseaux of Las Vegas, Nevada, on the briefs.

**OPINION**

CALLAHAN, Circuit Judge:

Stephen Burrell (Burrell) appeals the district court's grant of summary judgment on behalf of various detectives of the Las Vegas Metropolitan Police Department in this 42 U.S.C. § 1983 action. This court reviews the grant of summary judgment de novo, and may affirm on any basis supported by the record. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Hell's Angels Motorcycle Corporation v. McKinley*, 360 F.3d 930, 931 n.1 (9th Cir. 2004). We have jurisdiction under 28 U.S.C. § 1331, and we affirm.

**I**

Burrell, a felon with a lengthy history of arrests, was suspected by the Las Vegas Metropolitan Police Department of possessing illegal weapons and drugs. On February 4, 1999, Detective McIlroy applied for a search warrant to search Burrell's apartment on 1750 Karen Avenue. In the affidavit in support of the search warrant, Detective McIlroy stated that he had obtained current and past information from reliable informants that led him to believe that Burrell was trafficking in drugs and possessed firearms.

Detective McIlroy indicated that, in December of 1998, he was contacted by a reliable informant, who told him that "Burrell often travels to California and purchases cocaine which he in returns [sic] brings back to Las Vegas for resale." On December 19, 1998, police arrested Burrell after he shot his then-girlfriend in the leg during a domestic dispute. Burrell admitted to officers to possessing a gun and shooting his girlfriend. Detectives recovered two handguns and more than four grams of cocaine during this incident. Burrell was ultimately charged with trafficking cocaine, battery with a deadly weapon, and two counts of being an ex-felon in possession of a firearm.

On February 3, 1999, the day before Detective McIlroy applied for the search warrant, he was again contacted by two informants. The informants told Detective McIlroy that "Burrell was currently in California picking up an unknown [quantity] of cocaine and was to bring it back with him to Las Vegas." One of these informants also told Detective McIlroy that Burrell was coming back to Las Vegas "at any time with the cocaine."

On February 4, 1999, a third informant told Detective McIlroy that Burrell was back in Las Vegas, that he had been inside Burrell's apartment, and had observed Burrell cooking approximately one ounce of rock cocaine over the stove. The informant told Detective McIlroy that Burrell possessed a handgun, which he kept in his bedroom. The informant also identified Burrell's car by its license plates and stated that it was parked outside his apartment at 1750 Karen Avenue. Detective McIlroy sent Detective Rector to provide surveillance of Burrell's 1750 Karen Avenue apartment. Detective Rector confirmed that a car matching those plates was indeed parked outside of that apartment and communicated this to Detective McIlroy, who then sought to obtain the search warrant.

Before the warrant had issued, Detective Rector continued to provide surveillance of Burrell's 1750 Karen Avenue apartment. At some point, Burrell left his apartment at 1750 Karen Avenue and drove to his other apartment at 1500 Karen Avenue. Detective Rector followed Burrell to the second apartment, where he claims that he then stopped and detained Burrell after Burrell attempted to exit the vehicle and enter the apartment.

Burrell, however, alleges that Detective Rector followed him to the second apartment, stopped Burrell in his car, and forcibly removed him from the car at gunpoint. Burrell asserts that Detective Rector handcuffed him, read him his *Miranda*

rights, and later informed him he was under arrest for suspicion of being under the influence of a controlled substance.

It is undisputed that thereafter the police transported Burrell back to his 1750 Karen Avenue apartment, where Burrell refused to allow officers to search that apartment, but he agreed to allow them to wait inside the entrance until they obtained the warrant. After the officers were notified by phone[1] that a search warrant had issued, they searched the apartment. During the search, Detective Rector and another police officer returned to the 1500 Karen Avenue apartment. Courtney Johnson, who shared the 1500 Karen Avenue apartment with Burrell, provided the officers with oral and written consent for the officers to search the 1500 Karen Avenue apartment.

The search at the 1750 Karen Avenue residence yielded a .38 caliber revolver and a shotgun, as well as 2.73 grams of cocaine. The search at the 1500 Karen Avenue apartment led to the recovery of two scales commonly used to weigh narcotics for sale, a Mosberg 12 gauge shotgun, a yellow bag filled with shot gun shells, and two boxes of .38 caliber bullets, which were similar to the bullets used in the gun recovered at the 1750 Karen Avenue apartment. Burrell was charged with two counts of being a felon in possession of a firearm and for possession of cocaine with intent to distribute. Burrell was indicted by a federal grand jury of being a convicted felon in possession of a firearm on May 13, 1999.

On December 8, 1999, Burrell sued the detectives under 42 U.S.C. § 1983 for violating his Fourth Amendment rights. The district court granted the officers' motion for summary judgment, finding that the officers had probable cause and did not use excessive force in arresting Burrell, and that the searches of his two apartments were reasonable under the Fourth Amendment. Burrell timely appealed to this court.

---

[1]Burrell contends that he had to wait two or three hours from the time that he was allegedly arrested to the time that the search was completed.

## II

Burrell first argues that the district court erred in granting Detective Rector's motion for summary judgment. He contends that Detective Rector used excessive force and falsely arrested him outside the 1500 Karen Avenue apartment. In its briefs, the government disputed whether the encounter was an arrest, but conceded at oral argument that, if the encounter was an arrest, Detective Rector lacked probable cause to arrest Burrell.

[1] We hold that, assuming without deciding that the encounter was an arrest and the police lacked probable cause to arrest Burrell at that time, a reasonable officer in Detective Rector's position would have believed that he had probable cause to arrest Burrell and to use force in doing so. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

[2] The particularized facts known by the officers at the time of the encounter amply show that a reasonable officer in Detective Rector's position could have believed that he was authorized to use force to take Burrell into custody. *See Reynolds v. San Diego County*, 84 F.3d 1162, 1170 (9th Cir. 1996) ("The inquiry is not whether another reasonable or more reasonable interpretation of events can be constructed . . . after the fact. . . . Rather, the issue is whether a reasonable officer could have believed that his conduct was justified.") (internal quotations and citations omitted), *overruled on other grounds*

*by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997) (en banc).**²**

**[3]** At the time of the encounter, the officers were aware that Burrell was a felon who had recently confessed to shooting his former girlfriend, and that it was highly likely that he continued to deal drugs and possess firearms.**³** Several informants had recently stated that Burrell had just returned from purchasing cocaine in California. Indeed, one of these informants had reported that he had seen Burrell cooking crack on the stove that very day (when the informant contacted the detective), and that Burrell still kept a gun in the bedroom of his apartment.

**[4]** There was no reason to think that the gun in the bedroom was the only firearm that Burrell possessed, or that he did not carry it, or other weapons, when he was outside the apartment. When a drug dealer has shot someone and continues to commit the crime of possessing a firearm, the police may be permitted to act on the assumption that he may be armed and dangerous. *See United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979) ("It is not unreasonable to suspect that a dealer in narcotics might be armed."); *see also Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) ("A

---

**²**Because the detectives were working in close concert, a court may consider the collective knowledge of these detectives in considering their beliefs concerning probable cause or reasonable suspicion. *See United States v. Bernard*, 623 F.2d 551, 561 (9th Cir. 1979) (reasoning that "the officers involved were working in close concert with each other and the knowledge of one of them was the knowledge of all") (internal citation omitted); *see also United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990).

**³**Although a prior criminal history cannot alone establish reasonable suspicion or probable cause to support a detention or an arrest, it is permissible to consider such a fact as part of the total calculus of information in these determinations. *See Brinegar v. United States*, 338 U.S. 160, 177 (1949).

police officer's right to make an arrest necessarily includes the right to use some degree of force.").[4]

**[5]** Thus, under the totality of the circumstances, a reasonable officer in Detective Rector's position could have believed there was probable cause to arrest Burrell and to use force in doing so. We, therefore, affirm the district court's grant of summary judgment on this issue. *See McCray v. State of Illinois*, 386 U.S. 300, 304 (1967); *see also Draper v. United States*, 358 U.S. 307 (1959).

Burrell next argues that the district court erred in granting summary judgment to the other detectives as to the search of the 1750 Karen Avenue apartment. He contends that Fed. R. Crim. P. 41(d) requires federal officers, absent exigent circumstances, to deliver a warrant at the outset of a search. *See United States v. Gantt*, 194 F.3d 987, 1004 (9th Cir. 1999); *Ramirez v. Butte-Silver Bow*, 298 F.3d 1022, 1027 (9th Cir. 2002), *affirmed Groh v. Ramirez*, 540 U.S. 551 (2004). Burrell contends that the officers violated his Fourth Amendment rights when they commenced the search after receiving telephonic confirmation, but prior to the physical delivery, of the warrant.

---

[4]In addition, it is undisputed that the officers were preparing to execute a search at Burrell's 1750 Karen Avenue apartment, which was only a couple blocks away. Under the controlling law at the time of the incident, an officer could reasonably have believed that he was authorized to detain such a dangerous individual who remained in close proximity to his residence, where a search warrant was about to be executed, in order to protect his safety and the safety of his fellow officers. *See Michigan v. Summers*, 452 U.S. 692 (1981) (upholding the constitutionality of the detention of a person who was descending the front steps of a home as officers approached to search the residence); *see also Muehler v. Mena*, 125 S. Ct. 1465, 1469 (2005) (reaffirming the validity of *Summers* and noting that "minimizing the risk of harm to officers" is a substantial justification for detaining an occupant during a search.). As the officers had received information that there were weapons in the apartment and knew that there might be a slight delay in the search, with the proliferation of cellular phones, Burrell's removal from the curtilage of the apartment did not ameliorate Detective Rector's concern for his fellow officers.

The parties dispute whether detectives of the Las Vegas Metropolitan Police Department are, in fact, federal officers who are subject to this rule. Even assuming that the detectives were subject to this requirement, the clearly established law at the time of the search would not have put a reasonable officer on notice of a potential constitutional violation. *See Saucier*, 533 U.S. at 202.[5]

Finally, Burrell contends that the officers illegally searched his 1500 Karen Avenue property because the officers coerced Johnson into giving her consent to the search. Johnson stated in a May 9, 2001, affidavit that she consented only after officers informed her that a search warrant for the 1500 Karen Avenue apartment was on the way, and that she could get into trouble if they later found contraband on the premises.

[6] Burrell argues that *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968), is controlling. In *Bumper*, law enforcement officials gained entrance to a residence by falsely asserting they had a warrant to search, and the court found no consent. *Bumper*, however, states that consent is invalid where it is only given as a submission to legal authority. Here, by contrast, there is no indication that Rector made any indication that he had immediate authority to search the apartment without first obtaining Johnson's consent.

[7] Although the record suggests that Johnson may have misunderstood Detective Rector's statement that the detectives were awaiting a search warrant for the 1750 Karen Avenue apartment as referring to the 1500 Karen Avenue

---

[5]The incidents that form the basis for this action took place on February 4, 1999. This court's opinion in *Gantt*, holding that the federal rules require a search warrant to be delivered before a search is commenced, was not filed until June 7, 1999. Prior to *Gantt*, the prevailing law of the circuit was that the failure to serve a warrant at the outset of a search did not always violate the Fourth Amendment. *See United States v. Woodring*, 444 F.2d 749 (9th Cir. 1971); *Nordelli v. United States*, 24 F.2d 665 (9th Cir. 1928).

apartment, there is nothing in the record that indicates that Detective Rector was aware of Johnson's misinterpretation.[6] Thus, a reasonable officer in his position would not have been on notice that Johnson's consent was in any way involuntary.

**[8]** Here, the police made no threat of violence or false charges against Johnson, and she twice consented — both orally and in writing — to the search of the apartment. The fact that Johnson may have consented to avoid casting suspicion on herself if contraband was found on the premises does not vitiate her consent. *See United States v. Agosto*, 502 F.2d 612, 614 (9th Cir. 1974).

**[9]** Thus, on the facts of this case, the district court did not err in finding that the detectives were entitled to qualified immunity on this issue.

## III

Accordingly, the district court's grant of summary judgment on behalf of the detectives is AFFIRMED.

---

OAKES, Senior Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that Detective Rector is entitled to qualified immunity. The majority assumes, without deciding, that Burrell can establish a

---

[6]In her April 6, 1999 grand jury testimony, Johnson testified:

[D]etectives knocked on the door and asked me . . . if they could come in and talk to me and possibly search the house for any type of weapons or narcotics or a safe. And then I was, like, sure. . . . They said they had just left [the 1750 Karen Avenue apartment] but were waiting for a search warrant and, you know, if I didn't have a problem with them coming in and searching and I told them I didn't have a problem with them coming in because there shouldn't have been something in the house.

Fourth Amendment violation. Given the uncontroverted facts in the record, I would hold that Burrell has in fact established a Fourth Amendment violation by the initial warrantless arrest by Detective Rector in the absence of probable cause, which, as defendants conceded at oral argument, was lacking up until the moment officers discovered a weapon in Burrell's apartment. I would also hold that no reasonable officer in Detective Rector's position could have believed that he could properly arrest Burrell without probable cause, or that a detention, much less an arrest, could otherwise be justified as incident to a search under *Michigan v. Summers*, 452 U.S. 692 (1981), where a search warrant had not yet been issued.[1]

The defendants do not controvert that Detective Rector ordered Burrell to get out of his car at gunpoint, forced him face-down to the ground at gunpoint, handcuffed him, placed him in a police car while Burrell's car was searched and, that

---

[1]The district court below held that Rector effected an arrest that was justified under *Michigan v. Summers*. It is undisputed that the detectives in this case had not yet obtained a search warrant to search Burrell's home at the time Detective Rector seized Mr. Burrell at gunpoint. *Michigan v. Summers* does not provide for a limited detention, much less an arrest, absent a search warrant. Even if a search warrant had been obtained at the time of the seizure, I am not aware of any authority that has extended *Michigan v. Summers* to authorize the arrest of persons associated with the premises to be searched when such persons are neither on nor near the premises, for purposes of conveying them to the situs of the search. It is notable that defendants did not cite to *Michigan v. Summers* in their appellate briefs, nor do they now argue that the district court's grant of summary judgment should be upheld on this ground. Nevertheless, the majority suggests that Rector's actions could somehow have been justified under *Michigan v. Summers* because such preemptive action would have minimized risk to the officers sometime in the future when they succeeded in obtaining a warrant to search the premises. A reasonable officer in Rector's position, however, should have known that *Michigan v. Summers* does not purport to justify any such detention or arrest, whatever the circumstances, absent the existence of a search warrant. Here, the search warrant had not yet been issued, and any reasonable officer should have known that, absent a search warrant, a stop requires reasonable suspicion and an arrest requires probable cause.

search proving fruitless, then transported him, still in hand-cuffs, to 1750 Karen Avenue to await the grant of the search warrant application. Moreover, defendants do not dispute that Detective Rector Mirandized Burrell sometime before the search of either of Burrell's apartments began. According to the arrest report in the record, and in conformity with Detective Rector's trial testimony in the state court criminal proceedings, Detective Rector Mirandized Burrell some time before Rector left to seek consent to search the second apartment at 1500 Karen, and therefore necessarily did so before the search warrant for 1750 Karen had been issued, and before the search of either apartment began. According to the same arrest report, after the searches of the apartments each revealed a weapon, Detective McIlroy arrested Burrell, charging him with weapons counts. Burrell does not dispute the existence of probable cause for this second arrest following the discovery of weapons. Burrell, whose fingerprints did not appear on either of the weapons recovered, and who shared his apartments with other occupants, was tried and acquitted of the federal weapons charges arising from both of the February 4 searches.

Although defendants have argued, for the first time on appeal, that the initial seizure by Detective Rector was an investigatory stop, the seizure in this case was conducted in a manner indistinguishable from a full-scale formal arrest. *See Washington v. Lambert*, 98 F.3d 1181,1188-89 (9th Cir. 1996). None of the special circumstances in which courts have found that aggressive police action or especially intrusive means of effecting a stop may be justified, without converting the seizure into an arrest, are present here. *See id.* at 1189 ("our cases make clear that we have only allowed the use of especially intrusive means of effecting a stop in special circumstances, such as 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have informa-

tion that a crime that may involve violence is about to occur")
(footnotes omitted). Not one of the defendants' submissions
forming the record on this appeal contains a sworn statement
or assertion by defendants that they had specific information,
as the cases require, that Burrell was personally armed when
he was approached by Detective Rector. Defendants assert, in
lieu of the argument based upon *Michigan v. Summers*
advanced in the district court, that the facts supporting their
yet-unapproved application for the search warrant, alone and
without the need for any other suspicion-engendering event,
provided legal justification for arrest tactics in seizing Burrell.
The record, however, is devoid of any particularized facts or
objective bases justifying the type of seizure effected here.[2]
While defendants' counsel contended at oral argument that
the officers believed Burrell to be armed, counsel's argument
does not constitute record evidence of the specific "informa-
tion" which the cases cited in *Washington v. Lambert* require,
and it is nevertheless inappropriate for an appellate court to
assume or infer purported beliefs not actually articulated in
the record, particularly where defendants have been repre-
sented by counsel from the beginning of this litigation and
have had the opportunity to introduce evidentiary material
supporting their motions for summary judgment below.[3] In

---

[2]The affidavit in support of the warrant states only that an informant
reported that Burrell had a handgun "which he keeps in the bedroom."
This is hardly information that would warrant a full-scale arrest.

[3]While Burrell has been very ably represented on this appeal by
appointed counsel from the law firm Kirkland & Ellis LLP, it should be
noted that Burrell was proceeding as an incarcerated *pro se* litigant at the
time the district court entertained the parties' cross-motions for summary
judgment. The record in this case does not contain any form of the
required notice to incarcerated *pro se* litigants regarding the requirements
and consequences of a summary judgment motion, whether given by the
district court or by defendants. In *Klingele v. Eikenberry*, 849 F.2d 409
(9th Cir. 1988), the 9th Circuit held that a failure to give adequate notice
to an incarcerated *pro se* litigant was reversible error affecting the *pro se*
litigant's substantial rights, without engaging in a harmless error analysis.
*See also Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) (re-
affirming *Klingele*, but holding that the notice, which had theretofore been
required to issue from the district court, may be issued by the summary
judgment movant).

any case, notwithstanding defendants' arguments, the only reasonable conclusion to be drawn from the undisputed facts in the record is that Mr. Burrell was formally arrested when he first encountered Detective Rector.

The majority nevertheless holds that Detective Rector had arguable justification for the seizure and is therefore entitled to qualified immunity. Because it is clear from the record that Mr. Burrell was arrested without probable cause, Detective Rector can only be entitled to qualified immunity if a reasonable officer in his position would have an arguable basis to believe probable cause existed to arrest Burrell. Again, the defendants also have not identified any specific facts in the record which could form the basis for an objectively reasonable belief that probable cause existed for an arrest, and they have limited their argument on appeal to the vague claim that there was "at least a colorable basis for Detective Rector to believe there was probable cause for an arrest prior to the execution of the search warrant" because he "constitutionally relied upon facts yielded from Detective McIlroy's investigation and his own observations during the surveillance to reach this conclusion." Def. Br. at 23. There is nothing in Detective McIlroy's arrest report, or in any of the documents forming the record on this appeal, that indicates that the officers had particularized information that Burrell was personally armed at the time of the seizure by Detective Rector and prior to the search. The record on this motion for summary judgment, in short, merely shows that the detectives at most suspected that the search of Burrell's apartment might reveal incriminating evidence. This alone is insufficient to establish either actual, or an arguably and objectively reasonable belief in, probable cause to arrest Burrell prior to the execution of the search.

I would therefore reverse the district court's grant of summary judgment for Detective Rector and remand for further proceedings on Burrell's claim based upon his unconstitutional seizure. At minimum, the fact that the record is devoid of any sworn statements or factual submissions by the defen-

dants that could support a finding of qualified immunity warrants remand for expansion of the record and to allow the district court to consider qualified immunity in the first instance.