# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEPHEN BURRELL,
          *Plaintiff-Appellant,*

v.

MIKE MCILROY; GLEN C. RECTOR;
JEFF THORPE,
          *Defendants-Appellees.*

No. 02-15114

D.C. No.
CV-99-01612-KJD

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
September 13, 2004—San Francisco, California

Filed September 19, 2005
Amended September 20, 2006

Before: James L. Oakes,* Andrew J. Kleinfeld, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Oakes

---

*The Honorable James L. Oakes, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

## COUNSEL

Plaintiff-appellant was represented by Steven A. Engel and Susan Kearns of Kirkland & Ellis LLP of Washington, D.C.

Defendants-appellees were represented by Peter Angulo of Las Vegas, Nevada, at oral argument, and by Thomas D. Dilliard, Jr., and Lilli C. Hitt of Rawlings, Olson, Cannon, Gormley & Desruisseaux of Las Vegas, Nevada, on the briefs.

## ORDER

The opinion and dissent filed on September 19, 2005, and published at 423 F.3d 1121 (9th Cir. 2005) are hereby amended. An amended opinion and dissent are to be filed concurrently with this order.

With the filing of the amended opinion and dissent, Judges Kleinfeld and Callahan have voted to deny the petition for rehearing and suggestion for rehearing en banc. Judge Oakes voted to grant the petition for rehearing.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is DENIED. No subsequent petitions for rehearing or petitions for rehearing en banc may be filed.

## OPINION

CALLAHAN, Circuit Judge:

Stephen Burrell (Burrell) appeals the district court's grant of summary judgment on behalf of various detectives of the

Las Vegas Metropolitan Police Department in this 42 U.S.C. § 1983 action. This court reviews the grant of summary judgment de novo, and may affirm on any basis supported by the record. *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Hell's Angels Motorcycle Corporation v. McKinley*, 360 F.3d 930, 931 n.1 (9th Cir. 2004).We have jurisdiction under 28 U.S.C. § 1331, and we affirm.

## I

Burrell, a felon with a lengthy history of arrests, was suspected by the Las Vegas Metropolitan Police Department of possessing illegal weapons and drugs. On February 4, 1999, Detective McIlroy applied for a search warrant to search Burrell's apartment on 1750 Karen Avenue. In the affidavit in support of the search warrant, Detective McIlroy stated that he had obtained current and past information from reliable informants that led him to believe that Burrell was trafficking in drugs and possessed firearms.

Detective McIlroy indicated that, in December of 1998, he was contacted by a reliable informant, who told him that "Burrell often travels to California and purchases cocaine which he in returns [sic] brings back to Las Vegas for resale." On December 19, 1998, police arrested Burrell after he shot his then-girlfriend in the leg during a domestic dispute. Burrell admitted to officers to possessing a gun and shooting his girlfriend. Detectives recovered two handguns and more than four grams of cocaine during this incident. Burrell was ultimately charged with trafficking cocaine, battery with a deadly weapon, and two counts of being an ex-felon in possession of a firearm.

On February 3, 1999, the day before Detective McIlroy applied for the search warrant, he was again contacted by two informants. The informants told Detective McIlroy that "Burrell was currently in California picking up an unknown [quantity] of cocaine and was to bring it back with him to Las

Vegas." One of these informants also told Detective McIlroy that Burrell was coming back to Las Vegas "at any time with the cocaine."

On February 4, 1999, a third informant told Detective McIlroy that Burrell was back in Las Vegas, that he had been inside Burrell's apartment, and had observed Burrell cooking approximately one ounce of rock cocaine over the stove. The informant told Detective McIlroy that Burrell possessed a handgun, which he kept in his bedroom. The informant also identified Burrell's car by its license plates and stated that it was parked outside his apartment at 1750 Karen Avenue. Detective McIlroy sent Detective Rector to provide surveillance of Burrell's 1750 Karen Avenue apartment. Detective Rector confirmed that a car matching those plates was indeed parked outside of that apartment and communicated this to Detective McIlroy, who then sought to obtain the search warrant.

Before the warrant had issued, Detective Rector continued to provide surveillance of Burrell's 1750 Karen Avenue apartment. At some point, Burrell left his apartment at 1750 Karen Avenue and drove to his other apartment at 1500 Karen Avenue. Detective Rector followed Burrell to the second apartment, where he claims that he then stopped and detained Burrell after Burrell attempted to exit the vehicle and enter the apartment.

Burrell, however, alleges that Detective Rector followed him to the second apartment, stopped Burrell in his car, and forcibly removed him from the car at gunpoint. Burrell asserts that Detective Rector handcuffed him, read him his *Miranda* rights, and later informed him he was under arrest for suspicion of being under the influence of a controlled substance.

It is undisputed that thereafter the police transported Burrell back to his 1750 Karen Avenue apartment, where Burrell refused to allow officers to search that apartment, but he

agreed to allow them to wait inside the entrance until they obtained the warrant. After the officers were notified by phone[1] that a search warrant had issued, they searched the apartment. During the search, Detective Rector and another police officer returned to the 1500 Karen Avenue apartment. Courtney Johnson, who shared the 1500 Karen Avenue apartment with Burrell, provided the officers with oral and written consent for the officers to search the 1500 Karen Avenue apartment.

The search at the 1750 Karen Avenue residence yielded a .38 caliber revolver and a shotgun, as well as 2.73 grams of cocaine. The search at the 1500 Karen Avenue apartment led to the recovery of two scales commonly used to weigh narcotics for sale, a Mosberg 12 gauge shotgun, a yellow bag filled with shotgun shells, and two boxes of .38 caliber bullets, which were similar to the bullets used in the gun recovered at the 1750 Karen Avenue apartment. Burrell was charged with two counts of being a felon in possession of a firearm and for possession of cocaine with intent to distribute. Burrell was indicted by a federal grand jury of being a convicted felon in possession of a firearm on May 13, 1999.

On December 8, 1999, Burrell sued the detectives under 42 U.S.C. § 1983 for violating his Fourth Amendment rights. The district court granted the officers' motion for summary judgment, finding that the officers had probable cause and did not use excessive force in arresting Burrell, and that the searches of his two apartments were reasonable under the Fourth Amendment. Burrell timely appealed to this court.

## II

Burrell first argues that the district court erred in granting Detective Rector's motion for summary judgment. He contends that Detective Rector used excessive force and falsely

---

[1] Burrell contends that he had to wait two or three hours from the time that he was allegedly arrested to the time that the search was completed.

arrested him outside the 1500 Karen Avenue apartment. In its briefs, the government disputed whether the encounter was an arrest, but conceded at oral argument that, if the encounter was an arrest, Detective Rector lacked probable cause to arrest Burrell.

[1] Assessing the evidence in a manner most favorable to Burrell, *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996), this encounter was an arrest. Burrell was removed from his car at gunpoint, handcuffed, Mirandized, and told that he was under arrest. Under our case law, this confluence of circumstances leads us to conclude that he in fact was under arrest. *See Rhode v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) (holding restraint of suspects "necessarily crossed the line from investigatory stop to arrest because both were told that they were under arrest"); *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995) (holding that a police officer's statement to a suspect that she was "under arrest" helped to create sense of restraint necessary to effect an arrest); *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990) (holding the combination of the police's order to exit vehicle, handcuffing, and brandishing of weapons created an arrest); *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988) (holding an arrest occurred based on detention at gunpoint by police officers who stated they were making an arrest and gave *Miranda* rights). Given the government's concession that it lacked probable cause, the arrest was unconstitutional. Nonetheless, we hold that a reasonable officer in Detective Rector's position would have believed that he had probable cause to arrest Burrell and to use force in doing so.

[2] The particularized facts known by the officers at the time of the encounter amply show that a reasonable officer in Detective Rector's position could have believed that he was authorized to use force to take Burrell into custody. *See Reynolds v. San Diego County*, 84 F.3d 1162, 1170 (9th Cir. 1996) ("The inquiry is not whether another reasonable or more reasonable interpretation of events can be constructed . . . after

the fact. . . . Rather, the issue is whether a reasonable officer could have believed that his conduct was justified.") (internal quotations and citations omitted), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 .3d 999 (9th Cir. 1997) (en banc).**²**

**[3]** At the time of the encounter, the officers were aware that Burrell was a felon who had recently confessed to shooting his former girlfriend, and that it was highly likely that he continued to deal drugs and possess firearms.**³** Several informants had recently stated that Burrell had just returned from purchasing cocaine in California. Indeed, one of these informants had reported that he had seen Burrell cooking crack on the stove that very day (when the informant contacted the detective), and that Burrell still kept a gun in the bedroom of his apartment.

**[4]** There was no reason to think that the gun in the bedroom was the only firearm that Burrell possessed, or that he did not carry it, or other weapons, when he was outside the apartment. When a drug dealer has shot someone and continues to commit the crime of possessing a firearm, the police may be permitted to act on the assumption that he may be armed and dangerous. *See United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979) ("It is not unreasonable to suspect

---

**²**Because the detectives were working in close concert, a court may consider the collective knowledge of these detectives in considering their beliefs concerning probable cause or reasonable suspicion. *See United States v. Bernard*, 623 F.2d 551, 561 (9th Cir. 1979) (reasoning that "the officers involved were working in close concert with each other and the knowledge of one of them was the knowledge of all") (internal citation omitted); *see also United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990).

**³**Although a prior criminal history cannot alone establish reasonable suspicion or probable cause to support a detention or an arrest, it is permissible to consider such a fact as part of the total calculus of information in these determinations. *See Brinegar v. United States*, 338 U.S. 160, 177 (1949).

that a dealer in narcotics might be armed."); *see also Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) ("A police officer's right to make an arrest necessarily includes the right to use some degree of force.").

[5] Thus, under the totality of the circumstances, a reasonable officer in Detective Rector's position could have believed there was probable cause to arrest Burrell and to use force in doing so. We, therefore, affirm the district court's grant of summary judgment on this issue. *See McCray v. State of Illinois*, 386 U.S. 300, 304 (1967); *see also Draper v. United States*, 358 U.S. 307 (1959).

Burrell next argues that the district court erred in granting summary judgment to the other detectives as to the search of the 1750 Karen Avenue apartment. He contends that Fed. R. Crim. P. 41(d) requires federal officers, absent exigent circumstances, to deliver a warrant at the outset of a search. *See United States v. Gantt*, 194 F.3d 987, 1004 (9th Cir. 1999); *Ramirez v. Butte-Silver Bow*, 298 F.3d 1022, 1027 (9th Cir. 2002), *affirmed Groh v. Ramirez*, 540 U.S. 551 (2004). Burrell contends that the officers violated his Fourth Amendment rights when they commenced the search after receiving telephonic confirmation, but prior to the physical delivery, of the warrant.

The parties dispute whether Rule 41 applies to the search conducted by detectives of the Las Vegas Metropolitan Police Department because the search was "federal in character." *United States v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993). Our review of the record fails to reveal that federal officers were so involved in the investigation and search so as to render it "federal in character." Moreover, even if Rule 41 were applicable to the search, at the time of the search the failure to serve a warrant at the outset of a search was not a clearly established violation of the constitution. *See United States v. Woodring*, 444 F.2d 749 (9th Cir. 1971); *Katz v. United States*, 389 U.S. 347, 356 n. 16 (1967); *Nordelli v. United*

*States*, 24 F.2d 665 (9th Cir. 1928). Our decision in *Gantt*, 194 F.3d 987, on which Burrell relies, was not decided until six months after the search in this case. Accordingly, Burrell has not shown that the failure to deliver a warrant at the outset of the search was a constitutional violation. *See Saucier*, 533 U.S. at 201.

Finally, Burrell contends that the officers illegally searched his 1500 Karen Avenue property because the officers coerced Johnson into giving her consent to the search. Johnson stated in a May 9, 2001, affidavit that she consented only after officers informed her that a search warrant for the 1500 Karen Avenue apartment was on the way, and that she could get into trouble if they later found contraband on the premises.

[6] Burrell argues that *United States v. Bumper*, 391 U.S. 543, 548 (1968), is controlling. In *Bumper*, law enforcement officials gained entrance to a residence by falsely asserting they had a warrant to search, and the court found no consent. *Bumper*, however, states that consent is invalid where it is only given as a submission to legal authority. Here, by contrast, there is no indication that Rector made any indication that he had immediate authority to search the apartment without first obtaining Johnson's consent.

[7] Although the record suggests that Johnson may have misunderstood Detective Rector's statement that the detectives were awaiting a search warrant for the 1750 Karen Avenue apartment as referring to the 1500 Karen Avenue apartment, there is nothing in the record that indicates that Detective Rector was aware of Johnson's misinterpretation.[4]

---

[4]In her April 6, 1999 grand jury testimony, Johnson testified:

> [D]etectives knocked on the door and asked me . . . if they could come in and talk to me and possibly search the house for any type of weapons or narcotics or a safe. And then I was, like, sure. . . . They said they had just left [the 1750 Karen Avenue apartment] but were waiting for a search warrant and, you know, if I didn't have a problem with them coming in and searching and I told them I didn't have a problem with them coming in because there shouldn't have been something in the house.

Thus, a reasonable officer in his position would not have been on notice that Johnson's consent was in any way involuntary.

**[8]** Furthermore, the fact that an officer states that a search warrant is on the way is but one factor to consider amidst the totality of the circumstances. *See United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988). Here, the police made no threat of violence or false charges against Johnson, and she twice consented — both orally and in writing — to the search of the apartment. The fact that Johnson may have consented to avoid casting suspicion on herself if contraband was found on the premises does not vitiate her consent. *See United States v. Agosto*, 502 F.2d 612, 614 (9th Cir. 1974); *see also United States v. Culp*, 472 F.2d 459, 462 n.1 (8th Cir. 1973) ("Many cases imply that where law enforcement officers indicate only that they will attempt to obtain or *are getting a warrant* that such a statement cannot serve to vitiate an otherwise consensual search.") (emphasis added).

**[9]** Thus, on the facts of this case, the district court did not err in finding that the detectives were entitled to qualified immunity on this issue.

### III

Accordingly, the district court's grant of summary judgment on behalf of the detectives is **AFFIRMED**.

---

OAKES, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that "a reasonable officer in Detective Rector's position would have believed that he had probable cause to arrest Burrell and to use force in doing so." Majority Op. at 11619. My dissent is based on the following reasoning.

Not one of the defendants' submissions forming the record on this appeal contains a sworn statement or assertion by defendants that they had specific information, as the cases require, that Burrell was personally armed when he was approached by Detective Rector. Defendants assert, in lieu of the argument based upon *Michigan v. Summers* advanced in the district court, that the facts supporting their yet-unapproved application for the search warrant, alone and without the need for any other suspicion-engendering event, provided legal justification for the arrest tactics used in seizing Burrell. The record, however, is devoid of any particularized facts or objective bases justifying the type of seizure effected here.[1]

Furthermore, while defendants' counsel contended at oral argument that the officers believed Burrell to be armed, counsel's argument does not constitute record evidence of the specific "information" which the cases cited in *Washington v. Lambert* require. Likewise, it is inappropriate for an appellate court to assume or infer purported beliefs not actually articulated in the record, particularly where defendants have been represented by counsel from the beginning of this litigation and have had the opportunity to introduce evidentiary material supporting their motions for summary judgment below.[2]

---

[1]The affidavit in support of the warrant states only that an informant reported that Burrell had a handgun "which he keeps in the bedroom." This is hardly information that would warrant a full-scale, forceful arrest.

[2]While Burrell has been very ably represented on this appeal by appointed counsel from the law firm Kirkland & Ellis LLP, it should be noted that Burrell was proceeding as an incarcerated *pro se* litigant at the time the district court entertained the parties' cross-motions for summary judgment. The record in this case does not contain any form of the required notice to incarcerated *pro se* litigants regarding the requirements and consequences of a summary judgment motion, whether given by the district court or by defendants. In *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), the 9th Circuit held that a failure to give adequate notice to an incarcerated *pro se* litigant was reversible error affecting the *pro se* litigant's substantial rights, without engaging in a harmless error analysis. *See also Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) (reaffirming *Klingele*, but holding that the notice, which had theretofore been required to issue from the district court, may be issued by the summary judgment movant).

Nevertheless, the majority holds that Detective Rector had arguable justification for the seizure and is, therefore, entitled to qualified immunity. Since it is clear from the record that Burrell was arrested without probable cause, Detective Rector can only be entitled to qualified immunity if a reasonable officer in his position would have an arguable basis to believe probable cause existed to arrest Burrell. The defendants have not identified any specific facts in the record which could form the basis for an objectively reasonable belief that probable cause existed for an arrest. Moreover, on appeal, the defendants have limited their argument to the vague claim that there was "at least a colorable basis for Detective Rector to believe there was probable cause for an arrest prior to the execution of the search warrant" because he "constitutionally relied upon facts yielded from Detective McIlroy's investigation and his own observations during the surveillance to reach this conclusion." Def. Br. at 23. However, there is nothing in Detective McIlroy's arrest report, or in any of the documents forming the record on this appeal, that indicates that the officers had particularized information that Burrell was personally armed at the time of the arrest by Detective Rector and prior to the search. In short, the record on this motion for summary judgment merely shows that, at most, the detectives suspected that the search of Burrell's apartment might reveal incriminating evidence. This alone is insufficient to establish either actual, or an arguably and objectively reasonable belief in, probable cause to arrest Burrell prior to the execution of the search.

Therefore, I would reverse the district court's grant of summary judgment for Detective Rector and would remand for further proceedings on Burrell's claim based upon his unconstitutional seizure. At minimum, the fact that the record is devoid of any sworn statements or any factual submissions by the defendants that could support a finding of qualified immunity warrants remand for expansion of the record and for consideration by the district court of qualified immunity in the first instance.