FILED

APR 28 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATRICIA DESANTIS, Guardian Ad Litem; RICHARD DESANTIS deceased, and as Guardian Ad Litem; DANI DESANTIS, a minor; TIMOTHY FARRELL, a minor; ADRIANNE DESANTIS, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> CITY OF SANTA ROSA; RICHARD CELLI; TRAVIS MENKE; PATRICIA MANN, <br><br> Defendants - Appellants. | No. 08-17536 <br><br> D.C. No. 3:07-cv-03386-JSW <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted December 8, 2009
San Francisco, California

Before:  O'SCANNLAIN, RAWLINSON and BEA, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Defendants-Appellants City of Santa Rosa, *et al.* (collectively City of Santa Rosa) appeal from a district court order that denied the cross-motion for partial summary judgment filed by the City of Santa Rosa and the three police officers who shot lethal rounds at Richard DeSantis—Sergeant Richard Celli, Officer Travis Menke, and Officer Patricia Mann—in an action brought by Plaintiffs-Appellees under 42 U.S.C. § 1983 for use of excessive force.

We have jurisdiction over this interlocutory appeal to the extent that it raises purely legal questions. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Behrens v. Pelletier*, 516 U.S. 229, 313 (1996). Review is limited to whether the defendants are entitled to qualified immunity as a matter of law. *See Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004).

Reviewing the district court's denial of qualified immunity *de novo*, assuming the version of disputed issues of material facts asserted by the non-moving party, and drawing all reasonable inferences in favor of the non-moving party, *see Bryan v. McPherson*, 590 F.3d 767, 772 (9th Cir. 2009), we conclude that the district court did not err in denying qualified immunity to the City of Santa Rosa and the individual police officers. "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case

2

must proceed to trial." *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (citation omitted).

"We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" to determine whether the City of Santa Rosa employed constitutionally excessive force. *Bryan*, 590 F.3d at 772 (citations and internal quotation marks omitted). We must assume that the facts as presented by the non-movant are true and can be proven at trial. *See Johnson v. Jones*, 515 U.S. 304, 319 (1995). Taken in the light most favorable to the Plaintiffs, the facts in this case raise a triable issue of fact as to whether the officers who fired lethal shots at Richard DeSantis used excessive force. Both Patricia DeSantis and the dispatcher informed the police that Richard was mentally ill. Patricia also informed the officers that Richard was unarmed and the gun was in the house. The officers could see Richard's hands at all times, and could see he was not hiding a weapon in his waistband. Richard never threatened to inflict, and did not inflict, harm to his family or to the officers. He was outnumbered six to one by police officers. When Sergeant Celli shot him, Richard was at least ten yards away from the nearest officer, and was walking towards them with a shattered right arm. None of the officers ever warned Richard that they would shoot him if he did not stop. The six officers could have used the

3

Sage weapon again, or their Tasers, or their batons, or the dog.[1]  These facts raise a triable issue of fact as to whether the officers used excessive force against Richard when they shot and killed him.  *See Deorle v. Rutherford*, 272 F.3d 1271, 1282–83 (9th Cir. 2001), *as amended*.

For the same reasons, the district court did not err in denying qualified immunity to the City of Santa Rosa and the individual officers on the substantive due process claim.  Genuine issues of material fact remain to be resolved in determining whether the officers were motivated by a purpose to cause harm that shocks the conscience.  *See id.* at 1140.

**AFFIRMED.**

---

[1] Although officers are not required to use the least intrusive degree of force available, *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994), "the availability of alternative methods of capturing or subduing a suspect may be a factor to consider."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citation omitted).

*DeSantis v. City of Santa Rosa*, No. 08-17536

O'SCANNLAIN, Circuit Judge, dissenting:

By now, I would have thought it axiomatic that in excessive-force cases, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Nevertheless, the majority would deny qualified immunity to officers forced to make a split-second decision whether to shoot a deranged man, believed to be armed, who continued to charge directly at them after a warning shot by a less-lethal weapon failed to deter his progress. Even more surprising, the majority asserts that there are triable issues as to whether the officers' conduct shocks the conscience. Because I do not think that the officers' conduct was objectively unreasonable, let alone conscience shocking, I respectfully dissent.

I

On April 9, 2007, at approximately 1:00 am, Patricia DeSantis made a frantic 911 call reporting that her mentally ill husband, Richard, was having paranoid delusions and firing a gun into the ceiling of their home. At the time, their two-year-old daughter and twelve-year-old son were also in the home. Richard was still firing the gun as the first officers arrived at the scene. The six officers

who responded stationed themselves at the end of the driveway with their weapons drawn and took cover.

Patricia was able to lead her husband outside to deal with the police. She testified in her deposition that she told police that he was having mental health issues and that the gun was in the house. At the time, Richard was wearing only a pair of baggy jeans. Although the police did not see anything in his hands or on his person, they did not have an opportunity to search him for weapons until after the incident unfolded.

At first, Richard reluctantly complied with the officers' orders to get down on the ground. However, without any warning or provocation, he got up and began charging at Officers Menke and Mann. After Richard got within 10-15 yards of them, Sergeant Soares fired a "less-lethal" Sage weapon, striking Richard in the arm with a plastic bullet. When this warning shot failed to stop the charge, Sergeant Celli fired his rifle. That shot, too, failed to stop Richard, who got within 10-15 feet of Officers Menke and Mann when both fired their service weapons.

Richard, who turned out to be unarmed, was pronounced dead at the scene. The entire episode, from the police arrival to the shooting, lasted only about sixty to ninety seconds.

II

2

A

The majority holds that there is a triable issue of fact as to whether the officers used excessive force, relying in part on Patricia's deposition testimony. In so holding, the majority appears to have fallen into the very trap against which the Supreme Court warned in *Scott v. Harris*: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007).

The majority credits Patricia's testimony that her husband was merely "walking" toward the officers when the officers fired on him.[1] Not so, according to the seven other eyewitnesses, who testified that the round from the Sage weapon only slowed Richard "momentarily," and that he continued to *sprint* directly toward Officers Mann and Menke. **[ER 242, 344 (Celli); 380, 387-88 (Menke); 434-35 (Mann); 469, 471 (Soares); 533-35 (Jones); 1027 (Ellsworth); 1169 (Silny)].** Given these seven consistent accounts, plus Patricia's admission that "[i]t was like slow motion, so I can't even tell you how fast it all moved," her "version

---

[1] The majority also notes that Richard had a "shattered right arm." This fact is irrelevant, however, absent any evidence in the record that the officers knew he was so injured.

3

of events is so utterly discredited by the record that no reasonable jury could have believed [her]." *Id.* at 380. Indeed, not even the district court gave the DeSantises the benefit of this inference when viewing the facts in the light most favorable to them. **[Dist. Ct. Order at 11.]** Consequently, I am perplexed as to why the majority insists on characterizing Richard's charge at the officers as "walking."

B

The purpose of the qualified immunity doctrine "is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). In my view, the officers who shot Richard are entitled to qualified immunity on the excessive force claim because they made a reasonable mistake as to whether he was armed. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The officers testified that they believed that Richard was still armed when he charged at Officer Menke. **[ER 234 (Celli), 380 (Menke), 416 (Mann)]**. Even assuming that Patricia told the officers that her husband was not armed, and they could not see a weapon on his person, I still cannot say that their belief was unreasonable when (1) he had been firing a weapon in an occupied residence just a minute earlier, (2) he had not yet been searched for weapons, and (3) he could have

4

been concealing a weapon in his baggy jeans. *See Burrell v. McIlroy*, 464 F.3d 853, 858 (9th Cir. 2006) (holding that when a shooting suspect is known to keep a firearm in his apartment, police may "act on the assumption that he may be armed and dangerous" even outside the apartment).

Although "[t]he officers may not have known for certain whether [Richard] had a weapon, . . . it would have been more than foolish for them to assume he did not; and it would be singularly inappropriate for us to essentially force the police to make such a dangerous assumption." *Chew v. Gates*, 27 F.3d 1432, 1465 (9th Cir. 1994) (Trott, J., dissenting). Therefore, I simply cannot agree with the district court that the officers should have waited to act "until he reached them and was able to wrestle a gun away." **[Dist. Ct. Order at 12]** If this is how the police must operate to avoid trial for excessive force, I question whether the qualified immunity doctrine serves any purpose at all.

Because I believe that the majority's holding would paralyze police officers' ability to make split-second judgments to protect themselves and the public, I would reverse the district court's denial of qualified immunity on the excessive-force claim.

III

Finally, I cannot agree with the majority that genuine issues of material fact

5

remain with respect to the Fourteenth Amendment substantive due process claims. The district court denied the cross-motions for summary judgment not because triable issues remain, but because the parties did not address the correct legal standard in their moving papers. Upon de novo review, however, I am unable to conclude that the DeSantises have raised a triable issue with respect to whether the officers' conduct shocks the conscience.

The relevant legal standard is whether the officers "acted with a purpose to harm . . . without regard to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1133 (9th Cir. 2008). To survive summary judgment, the DeSantises "must do more than simply allege that the defendants acted with an improper motive." *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (per curiam). Not only do the DeSantises' conclusory allegations of improper motive fall short of the mark, but the record amply supports the officers' testimony that they "did not intend to commit any harm unrelated to the legitimate use of force necessary to protect the public and themselves." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 373 (9th Cir. 1998). Therefore, I would reverse on the Fourteenth Amendment claim as well.

IV

For the foregoing reasons, I respectfully dissent.

6